# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| CLEON ELROY DILLARD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20-cv-00151 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LT. SMITH, | ) | By:     Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendant. | ) | |

Cleon Elroy Dillard, a prisoner proceeding *pro se*, filed this civil rights action under 42 U.S.C. § 1983 against Rodney Smith, a deputy at the Martinsville City Jail ("the Jail").[1] Dillard claims that Smith used excessive force against him while he was being booked into the Jail on September 7, 2019. Both parties have moved for summary judgment. For the reasons set forth below, the motions for summary judgment will be denied.

## I.    FACTUAL BACKGROUND

On September 7, 2019, Dillard was arrested in the City of Martinsville for public intoxication. (Compl. ¶ E [ECF No. 1].) Following his arrest, officers with the Martinsville City Police Department transported Dillard to the Jail. (Aff. of Rodney Smith ¶ 2, Mar. 1, 2021 [ECF No. 34-1].) Smith was on duty when Dillard arrived for booking and interacted with him during that process. (*Id.*; Compl. ¶ E.)

---

[1] The defendant is identified in the complaint as Lieutenant Smith. (Compl. 1 [ECF No. 1].)

The parties present conflicting accounts of what occurred during the booking process. According to Dillard's verified complaint,[2] a female deputy with the last name of Knight interrupted a conversation between Dillard and Smith and called Dillard "stupid." (Compl. ¶ E.) The comment prompted Dillard to "curse" at the female deputy. (*Id.*) Dillard alleges that, even though he did not threaten or move toward the female deputy, Smith jumped up and "slam[med Dillard's] head into the wall so hard [that Dillard knocked his] front teeth out[,]" and, as a result, that he experienced severe headaches for weeks. (*Id.* & Attach. to Compl. 1 [ECF No. 1. at 3].)

Smith, on the other hand, denies slamming Dillard against the wall. (Smith Aff. ¶ 3.) According to Smith's affidavit, Dillard "refused to stand still for his photographs to be taken and became more verbally hostile," prompting Smith to put his hand on Dillard's upper arm in order to hold Dillard in place. (*Id.*) Upon the completion of the photographs, Dillard started to jerk away from Smith in a manner that allegedly led Smith to believe that Dillard was going to become combative. (*Id.*) Smith contends that he "therefore placed . . . Dillard against the wall to physically control his movement and then escorted him to his cell with the aid of another deputy." (*Id.*) Smith maintains that Dillard did not hit his head or suffer any form of injury during their encounter in the booking area. (*Id.*) Smith's evidence also indicates that Hope Knight, who previously worked as a deputy at the Jail, was not on duty on September 7, 2019, and that Dillard did not mention any altercation or injuries to other officers who were on duty that day. (Aff. of Hope Knight ¶ 2, Apr. 14, 2021 [ECF No. 34-5]; Aff. of Christy

---

[2] "A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" *Goodman v. Diggs*, 986 F.3d 493, 495 n.2 (4th Cir. 2021) (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020)). Dillard's complaint satisfies these verification requirements. (*See* Compl. at 2.)

Barker ¶ 3, May 6, 2021 [ECF No. 34-2]; Aff. of Travis Thompson ¶ 3, Mar. 1, 2021 [ECF No. 34-3]; Corrected Aff. of Richard S. Blankenbaker ¶ 3, May 26, 2021 [ECF No. 41].)

On September 11, 2019, Dr. James Isernia examined Dillard at the Jail. (Def.'s Ex. G at 2 [ECF No. 34-7].) The examination notes indicate that Dillard "was seen for elevated [b]lood pressure," "some tongue/mouth irritation and rash," and "[h]eadache and head pain." (*Id.*) Dr. Isernia prescribed several medications, including Tylenol and aspirin. (*Id.*) Dillard was released on bond the following day. (Smith Aff. ¶ 4.)

In October 2019, Dillard was taken to Sovah Health-Martinsville after exhibiting signs of a seizure. (Attach. to Compl. 1.) He was found to have a subdural hematoma (a collection of "blood on [his] brain"). (*Id.*; *see also* Def.'s Ex. H at 5 [ECF No. 34-8].) As a result of this discovery, Dillard was transported to Carilion Roanoke Memorial Hospital, where he underwent brain surgery. (Attach. to Compl. 1; *see also* Def.'s Ex. H. at 6.)

## II.    PROCEDURAL HISTORY

Dillard filed suit against Smith on March 9, 2020, by filing a verified form complaint under 42 U.S.C. § 1983. Liberally construed, the complaint seeks to recover damages for the alleged use of excessive force during the booking process. (*See* Compl. ¶¶ E, F; Attach. to Compl. 1.)

Smith filed an answer to the complaint on October 23, 2020. (ECF No. 23.) On October 26, 2020, the magistrate judge directed Smith to file any motion for summary judgment within 60 days pursuant to Standing Order 2020-16. (ECF No. 24.) After Smith failed to move for summary judgment within the 60-day period, the case was set for trial beginning September 9, 2021. (ECF No. 25.)

On May 7, 2021, Smith filed a motion for summary judgment. (ECF No. 34.) The motion is accompanied by several supporting documents, including affidavits[3] and a "medical file review" performed by Dr. Richard L. Wilson, Jr. (ECF No. 34-8.)

The court held a status conference on May 24, 2021, during which the court questioned the timeliness of Smith's motion for summary judgment. Consistent with the court's instructions during that conference, Smith filed a motion for leave to file his motion for summary judgment (ECF No. 40), which Dillard has not opposed.

On June 10, 2021, Dillard filed a cross-motion for summary judgment. (ECF No. 42.) The motions for summary judgment have been fully briefed and are ripe for disposition.

## III.    STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242, 248 (1986)). In determining whether a genuine dispute of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

"When faced with cross-motions for summary judgment, [courts] consider 'each motion separately on its own merits to determine whether either of the parties deserves

---

[3] Smith has moved to correct one of the affidavits. (ECF No. 41.) That motion will be granted.

judgment as a matter of law.'" *Bacon v. City of Richmond*, 475 F.3d 633, 636–37 (4th Cir. 2007) (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). "The court must deny both motions if it finds that there is a genuine dispute of material fact, but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 95 F. Supp. 3d 860, 869 (D. Md. 2015) (internal quotation marks and citation omitted).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "However, it is well established that 'a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.'" *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (emphasis in original) (quoting *Williams*, 952 F.2d at 823). Accordingly, the court will consider Dillard's verified complaint in ruling on the pending motions for summary judgment.

## IV.    DISCUSSION

### A.    Smith's Motion for Leave to File his Motion for Summary Judgment

Before turning to the parties' motions for summary judgment, the court must decide whether to grant Smith leave to file his motion outside the 60-day period set by the magistrate judge. The court construes Smith's motion for leave to file as a motion to extend the time under Federal Rule of Civil Procedure 6(b). Rule 6(b)(1)(B) governs extensions of time after the relevant deadline has passed. The rule provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made

after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The determination of whether neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). These include the danger of prejudice to the nonmoving party, the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, and whether the moving party acted in good faith. *Id.*

The court finds that any neglect on the part of Smith is excusable and that extending the deadline for filing a motion for summary judgment will not prejudice Dillard or disrupt the proceedings. Smith explains that his motion for summary judgment is based on evidence that was not available at the time of the 60-day deadline, including many of Dillard's medical records. (*See* Def.'s Mot. for Leave to File 3 [ECF No. 40].) "As a general rule, summary judgment is appropriate only after 'adequate time for discovery.'" *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Additionally, Smith filed his motion for summary judgment four months before the trial date, thereby allowing sufficient time for the motion to be decided prior to trial. Finally, the court notes that Dillard received additional time to respond to Smith's motion for summary judgment and that, despite being given the opportunity to do so, Dillard did not oppose Smith's request for leave to file the motion. (*See* ECF No. 39.) Instead, Dillard elected to file his own motion for summary judgment on June 10, 2021. For these reasons, the court will grant Smith's motion for leave to file his motion for summary judgment.

## B.     The Parties' Motions for Summary Judgment

Both parties have moved for summary judgment on the merits of Dillard's claim that Smith used excessive force against him during the booking process. Because Dillard was a pretrial detainee at the time of Smith's alleged misconduct, this claim is properly analyzed under the Due Process Clause of the Fourteenth Amendment.[4] *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015); *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). The Due Process Clause protects a pretrial detainee from the use of force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–39 (1979)). To prevail on an excessive-force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. This standard "turns on the facts and circumstances of each case," and various factors, including the following, "may bear on the reasonableness or unreasonableness of the force used":

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397 (internal quotation marks and citations omitted). Because the relevant standard is objective, "the defendant's state of mind is not a matter that a plaintiff is required to prove." *Id.* at 395.

---

[4] The Eighth Amendment, on which Smith bases his arguments, governs "excessive force claims brought by convicted prisoners." *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). Because Dillard was a pretrial detainee at the time of the events giving rise to his claim, "the Eighth Amendment has no application." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 245 (1983).

After reviewing the record, the court concludes that neither party is entitled to summary judgment on Dillard's excessive-force claim. Because Dillard's verified complaint is the equivalent of an affidavit, there are factual disputes as to the level of force used by Smith and whether it was objectively unreasonable. Such factual disputes include: whether Dillard made aggressive or threatening moves toward Smith or any other deputy; whether Smith merely placed Dillard's body against the wall to physically control him, or whether Smith slammed Dillard's head into the wall; and whether Dillard actually hit his head or suffered any injuries during the encounter with Smith. "These factual disputes must be resolved to assess the *Kingsley* factors," *Duff v. Smith*, 665 F. App'x 242, 244 (4th Cir. 2016), and therefore preclude the entry of summary judgment in favor of either party. *See, e.g.*, *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1254 (10th Cir. 2013) ("Only where there are no disputed questions of historical fact does the court make the excessive force determination on its own, such as on summary judgment."); *Preston v. Morton*, No. 4:09cv00030, 2010 WL 2036112, at *2 (W.D. Va. May 24, 2010) ("Whether the named defendants actually committed the acts complained of is the *sine qua non* of virtually *all* civil actions.").

In reaching this decision, the court recognizes that Dillard "has not identified a single witness that can corroborate his version" of what transpired during the booking process. (Def.'s Reply Br. 4 [ECF No. 52].) It is well settled, however, that an opposing party's sworn statements based on personal knowledge need not be corroborated to defeat summary judgment. *See Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017) ("[C]ourts have long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because

it is self-serving. Rather if such an affidavit is based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts.") (internal quotation marks and citations omitted). Accordingly, the fact that there are more affidavits supporting Smith's version of events is not determinative in his favor on summary judgment. On summary judgment, it "is not [the court's] job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe." *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991). "Those tasks are for the jury." *Id.*

Finally, the court rejects Smith's argument that the evidence "proves" that Dillard did not suffer any injuries as a result of the alleged use of excessive force on September 7, 2019. Def.'s Reply Br. 3.) At a minimum, Dillard's verified complaint indicates that he suffered severe headaches as a result of his head hitting the wall, and the examination notes from Dr. Isernia reflect that Dillard was treated for headaches and head pain on September 11, 2019. Courts have recognized that "as long as a plaintiff has suffered some injury, even relatively insignificant injuries . . . will prove cognizable when resulting from an officer's unreasonably excessive force." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (internal quotation marks and citation omitted). Thus, even if Dillard ultimately fails to prove that he suffered the subdural hematoma or some other serious injury as a result of Smith's actions, Dillard could nonetheless prevail on his claim of excessive force.[5] *Cf. Wilkins v. Gaddy*, 559

---

[5] In arguing that the subdural hematoma was not caused by the use of force on September 7, 2019, Smith relies on the "medical file review" performed by Dr. Wilson at the request of Smith's counsel. Unsworn expert reports "are inadmissible on summary judgment unless accompanied by affidavits or depositions swearing to their contents and conclusions." *Edens v. Kennedy*, 112 F. App'x 870, 879 (4th Cir. 2004). Because Dr. Wilson's unsworn report is not accompanied by an affidavit or deposition, the court declines to consider his opinions at this stage of the proceedings. *Id.* Even if the court were to consider Dr. Wilson's opinions, however, they would not alter the court's conclusion that summary judgment is inappropriate.

U.S. 34, 34 (2010) (instructing lower courts "to decide [Eighth Amendment] excessive force claims based on the nature of the force rather than the extent of the injury"); *see also Nasseri v. City of Athens*, 373 F. App'x 15, 17 (11th Cir. 2020) ("The extent of injury is only one factor in a Fourteenth Amendment excessive force claim and is not dispositive.") (citing *Wilkins*, 559 U.S. at 38).

## V.  CONCLUSION

For the reasons stated, the court concludes that there are genuine issues of material fact regarding the level of force used by Smith on September 7, 2019, and whether it was objectively unreasonable under the circumstances. Therefore, the parties' motions for summary judgment will be denied, and the case will proceed to trial on Dillard's claim of excessive force.

**ENTERED** this 16th day of July, 2021.


*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE