IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CLEON ELROY DILLARD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20-cv-00151 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LT. SMITH, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Cleon Elroy Dillard, a prisoner proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against Rodney Smith, a deputy at the Martinsville City Jail. Dillard claims that Smith used excessive force against him while he was being booked into the Jail on September 7, 2019. In particular, Dillard alleges that Smith slammed his head into a wall, causing severe head pain and dental trauma. But Dillard also contends that on October 23, 2019, more than six weeks later, he was taken to a hospital for seizure-like symptoms and underwent surgery for a subdural hematoma. According to Dillard, these serious, but later-manifesting, medical conditions were also caused by Smith's excessive use of force.

The case is scheduled for a jury trial on September 9, 2021. In advance of trial, Dillard and Smith filed motions *in limine* seeking to exclude certain types of testimony regarding the nature and extent of Dillard's alleged injuries. Specifically, Smith has moved to preclude Dillard from testifying or presenting any evidence regarding the symptoms and conditions for which Dillard was hospitalized and treated in October 2019. (*See* ECF No. 65.) Dillard, in turn, has moved to exclude the opinions of Smith's medical expert, Dr. Richard L. Wilson, Jr., a physician in Blacksburg, Virginia. (*See* ECF No. 59). The court heard oral argument on these

and other motions during a pretrial conference on August 31, 2021. For the reasons explained below, the motions *in limine* will be granted in part.[1]

## Discussion

### I. Smith's Motion in Limine

Smith seeks to preclude Dillard from offering testimony or other evidence regarding the symptoms and conditions for which Dillard was hospitalized in October 2019, including the subdural hematoma that required surgery. Smith argues that expert testimony is necessary to establish a causal connection between these particular medical issues and the alleged use of force. Smith further emphasizes that Dillard did not identify any expert witnesses during discovery.

In a § 1983 action, the plaintiff must prove that the defendant's conduct was the proximate cause of a claimed injury. *Kane v. Lewis*, 604 F. App'x 229, 234 (4th Cir. 2015). "For damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred." *McCaskill v. Yankalunas*, 245 F. App'x 274, 279 (4th Cir. 2007) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000)).

It is well-settled that expert testimony is "not always necessary to establish causation" in cases involving the alleged use of excessive force. *Zartner v. Miller*, 760 F. App'x 558, 563 (10th Cir. 2019); *see also Parson v. Miles*, No. 4:17-cv-00708, 2020 WL 58287, at *6 n.9 (D.S.C. Jan. 6, 2020) (noting that the "there is no 'blanket rule' requiring expert testimony in excessive

---

[1] The pending motions *in limine* also seek to exclude other types of evidence. The court will issue a separate order addressing the remaining issues raised in the motions.

- 2 -

force cases") (quoting *Kopf v. Skyrm*, 993 F.2d 374, 378 (4th Cir. 1993)). Courts have consistently held that "[n]o expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations." *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009). For instance, "a causal connection between an altercation and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs." *Zeismer v. Hagen*, 785 F.3d 1233, 1238 (8th Cir. 2015); *see also Zartner*, 760 F. App'x at 563 (noting that "expert testimony might be unnecessary to find causation when a brawl leads to a broken nose or black eye"). Additionally, a plaintiff may rely on his own testimony to establish that he experienced pain as a result of the alleged use of excessive force. *See Hendrickson*, 589 F.3d at 892 (rejecting the defendant's argument that the plaintiff was required to support his claims of increased back pain with expert medical evidence and concluding that the plaintiff's own testimony that the defendant "beat him up and it hurt really bad" was sufficient to prevail on a claim of excessive force); *Zeismer*, 785 F.3d at 1239 (holding that neck pain reportedly experienced by the plaintiff shortly after an alleged altercation with an officer was "within the range of common experience" and did not require expert testimony) (internal quotation marks omitted).

On the other hand, proof of causation generally must be established by expert testimony when an injury is sophisticated or complex. *Zeismer*, 785 F.3d at 1239. Likewise, "when an injury lacks an obvious origin and multiple causes are possible, expert medical testimony is necessary to prove causation between a use of force and an injury." *Zartner*, 760 F. App'x at 563; *see also Barnes v. Anderson*, 202 F.3d 150, 160 (2d Cir. 1999) (holding that the plaintiffs were required to produce expert medical evidence of causation in order to recover

for a miscarriage under § 1983, given the uncertain timing of the pregnancy, the unclear nature of the physical contact challenged in the lawsuit, and the fact that the female plaintiff was physically assaulted by other individuals after the incident at issue).

In this case, Dillard claims that he suffered four types of injuries as a result of having his head slammed into a wall on September 7, 2019: (1) headaches or head pain; (2) dental trauma in the form of a chipped or lost tooth; (3) seizure-like symptoms; and (4) a subdural hematoma. The court concludes that expert testimony is required to establish that the subdural hematoma and associated seizure-like symptoms were caused by the alleged use of excessive force. Unlike the first two types of injuries, a subdural hematoma and seizure-like activity are complex medical issues that do not fall within the range of a jury's common knowledge and experience. *See, e.g.*, *Parker v. United States*, 475 F. Supp. 2d 594, 598 (E.D. Va. 2007) (concluding that a factfinder would not know what symptoms suggest the possible existence of a subdural hematoma, whether or when the plaintiff exhibited such symptoms, or when the plaintiff's subdural hematoma developed). Additionally, it is undisputed that Dillard was not hospitalized for seizure-like symptoms and diagnosed with a subdural hematoma until October 23, 2019, and that Dillard's medical records indicate that he was involved in another altercation several days before he presented to the hospital. Given the complex nature of these particular medical issues, the significant time lapse between the alleged use of force and the onset of seizure-like symptoms, and the existence of other potential causes of the subdural hematoma, the court agrees with Smith that expert testimony is necessary to establish a causal link between the alleged use of force on September 7, 2019, and the symptoms and conditions for which Dillard received treatment the following month.

Dillard did not disclose any experts within the timeframe established by the court's pretrial order. (*See* ECF No. 51.) During the pretrial conference, Dillard confirmed that he did not have any experts to disclose, and that he did not intend to present any expert medical testimony at trial. In the absence of such testimony, Dillard cannot carry his burden of proving that the subdural hematoma and associated seizure-like symptoms were caused by the alleged use of excessive force. Accordingly, Smith's motion *in limine* will be granted in part, and Dillard will not be allowed to present any evidence or argument at trial pertaining to the medical issues for which he received treatment in October 2019.

As the court explained at the pretrial conference, Dillard will be allowed to testify as to his own physical condition immediately following and shortly after the alleged use of force on September 7, 2019. Specifically, Dillard may testify as to the pain, headaches, and dental trauma that he claims to have experienced. *See, e.g.*, *Hrichak v. Pion*, 498 F. Supp. 2d 380, 382 (D. Me. 2007) ("A lay witness . . . may testify regarding subjective symptoms, including, but not limited to, pain from or the existence of bruises, cuts, and abrasions resulting from the beating . . . because it does not require the knowledge of an expert witness. Thus, Mr. Hrichak may testify as to the nature of the alleged excessive force as well as symptoms he suffered following the incident.") (internal quotation marks and citations omitted).

**II. Dillard's Motion in Limine**

Smith timely noticed Dr. Richard Wilson as a medical expert. (*See* ECF No. 58). Smith's pretrial disclosures include the following summary of Dr. Wilson's anticipated testimony:

> It is anticipated that Dr. Wilson will testify by video deposition, the notice of which has been provided at ECF No. 50 . . . . Specifically, [Dr. Wilson] will opine that plaintiff was not injured on September 7, 2019, or during his subsequent brief

> incarceration, and that the plaintiff's claimed injury (broken teeth, subdural hematoma) were caused by a separate trauma temporally proximate to the plaintiff's October 23, 2019 ER presentation and consistent with the plaintiff's initial report to medical providers on or about October 23, 2019.

(*Id.* at 2–3.) Dillard timely filed a motion *in limine* seeking to preclude Dr. Wilson from testifying at trial.[2] (ECF No. 59 at 1.)

Dr. Wilson's anticipated testimony includes two expert opinions: (1) that Dillard was not injured on September 7, 2019; and (2) that the subdural hematoma and other injuries for which Dillard received treatment the following month were caused by a separate altercation that occurred shortly before Dillard was taken to the hospital. The second opinion is no longer necessary or relevant, given the court's decision to preclude Dillard from presenting any evidence or argument at trial pertaining to the medical issues for which he received treatment in October 2019. The court concludes that the first opinion must be excluded under the Federal Rules of Evidence.

Rule 702 sets forth the standard for the admissibility of expert testimony. The rule provides that "[a] witness who is qualified by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if": (1) the expert's testimony would "help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable

---

[2] Although Smith correctly notes that Dillard's motion specifically refers to Dr. Wilson's expert report, the court must "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments they suggest.'" *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Smith's pretrial disclosures indicate that Dr. Wilson's testimony will be "consistent with his report." (ECF No. 58 at 2.) Accordingly, the court construes Dillard's motion *in limine* as seeking to preclude Dr. Wilson from offering the same opinions at trial. And even if Dillard had not moved to exclude Dr. Wilson's opinions, the court "may consider the admissibility of expert testimony *sua sponte*." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The rule requires a district court to act as a gatekeeper to ensure that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993).

Expert testimony that meets the requirements of Rule 702 "may still be excluded by applying Rule 403." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (*en banc*) (citation omitted). Rule 403 provides that the court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Dr. Wilson's opinion that Dillard was not injured on September 7, 2019 must be excluded for several reasons. First, Smith has not shown that the proffered opinion is "based on sufficient facts or data" or "the product of reliable principles and methods." Fed. R. Evid. 702. Dr. Wilson's report indicates that his opinion is based primarily on examination notes from September 11, 2019, when Dr. James Isernia examined Dillard at the jail. (*See* ECF No. 34-8 at 15.) Although the examination notes indicate that Dillard complained of headaches and head pain, Dr. Wilson emphasizes that "[t]here is no documentation of any mention of trauma being associated with the reports of headache, or any other traumatically induced injury/condition which Mr. Dillard offered to the attending physician at the jail on [September 11, 2019]." (*Id.*) While Dr. Wilson appears to believe that the absence of any noted head injury or trauma in Dr. Isernia's examination notes indicates that Dillard was not actually injured, the facts upon which an expert bases his opinion "must permit reasonably accurate conclusions

as distinguished from mere guess or conjecture." *Kale v. Douthitt*, 274 F.2d 476, 482 (4th Cir. 1960). In other words, Rule 702 requires "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Because Smith has not shown that Dr. Wilson's opinion is based on anything more than his own subjective belief than any observed or reported trauma would have been documented by Dr. Isernia or other staff members at the jail, the opinion is not sufficiently reliable to be admitted under Rule 702. *See, e.g.*, *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 837 (7th Cir. 2015) ("The district court also found fault in the experts' differential etiology because, in its view, the etiology was not reliable. We agree. Dr. Dahlgren's differential etiology does not present the reliability that *Daubert* demands. An example is helpful here. After ruling in the alternative causes of 'inheritance, allergy, infection or another poison,' Dr. Dahlgren then ruled them out because, in his view, these causes 'would have been detected by [the appellants'] doctors and treated accordingly.' This approach is not the stuff of science. It is based on faith in his fellow physicians—nothing more. The district court did not abuse its discretion in rejecting it."). The same is true here. Insofar as Dr. Wilson would essentially be reiterating the contents of a treating physician's examination note and vouching for its completeness and accuracy, his purported expert testimony is not sufficiently reliable under Rule 702.

Second, Smith has not shown that Dr. Wilson's opinion testimony would be helpful to the jury. "As Rule 702 indicates, expert testimony is only permitted if it assists the trier of fact to understand evidence or to determine a fact in issue." *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993). To determine whether expert testimony satisfies this requirement, courts consider "whether the testimony is within the common knowledge of the jurors." *Id.* "This

type of evidence, almost by definition, can be of no assistance to a jury." *Id.* Likewise, expert testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63. Assuming that Dr. Isernia's examination notes are admitted into evidence, Smith's counsel is free to argue that the notes make no mention of any trauma or head injury. Expert testimony is simply unnecessary for a jury to understand this argument or the evidence on which it is based.

Third, Smith's pretrial disclosures indicate that he may call Dr. Isernia as a witness and that he anticipates that "Dr. Isernia will testify that he did not observe any facial trauma or indicia of trauma as described in the plaintiff's complaint."[3] (ECF No. 58 at 3.) Dr. Isernia is free to testify about his examination, diagnosis, and treatment of Dillard, and he can be asked to explain his own examination notes. Likewise, Smith can elicit testimony from other officers as to whether they observed any injuries during their interactions with Dillard. (*See id.* at 1–2 (identifying offers who will testify that Dillard did not mention any assault or complain of any injuries). Consequently, Dr. Wilson's testimony would be cumulative and potentially confusing to the jury.

Fourth and finally, the court notes that Dr. Smith's report contains inappropriate opinions regarding Dillard's credibility and the veracity of his allegations. (*See, e.g.*, ECF No. 34-8 at 16 ("[I]n my opinion, the medical file which I reviewed documents Mr. Dillard's routine underlying resistive & manipulative to his benefit behaviors which renders him a largely

---

[3] During the pretrial conference, Smith indicated that he may decline to call Dr. Isernia for strategic reasons. Whatever those reasons may be, they do not justify allowing Dr. Wilson to offer an opinion based on his own subjective beliefs as to what Dr. Isernia's examination notes would have included if Dillard had complained of or exhibited any injuries on September 11, 2019.

unreliable historian when the facts of history do not suit his purpose . . . . In my opinion, Mr. Dillard's fanciful memory, which is well documented to exist in my opinion, is a consistently used coping mechanism for him to offer self-preserving presentations."). Such critiques invade the province of the jury and "may not be addressed by an expert testifying under Rule 702." *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014); *see also Esch v. Cnty. of Kent*, 699 F. App'x 509, 517 (6th Cir. 2017) ("Expert witnesses are generally not permitted to base their conclusions on an evaluation of a witness's credibility, because credibility determinations are not an appropriate subject for except testimony."); *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) ("The jury must decide a witness' credibility. An expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility."). The court will therefore grant Dillard's motion *in limine* insofar as it seeks to exclude Dr. Wilson's opinion that Dillard was not injured on September 7, 2019.[4]

---

[4] The court also notes that Dillard did not agree to Dr. Wilson's deposition being used at trial, and Smith has not attempted to meet his burden of proving that the deposition is admissible under Federal Rule of Civil Procedure 32(a). *See Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990) ("The party seeking to admit a deposition at trial must prove that the requirements of Rule 32(a) have been met."); *Earl v. Norfolk State Univ.*, No. 2:13-cv-00148, 2016 U.S. Dist. LEXIS 28932, at *4 (E.D. Va. Mar. 7, 2016) ("[I]n the absence of an agreement, deposition testimony must still be introduced pursuant to Rule 32."); *Bobrosky v. Vickers*, 170 F.R.D. 411, 415 (W.D. Va. 1997) ("The court . . . holds that the [deposition] notices and/or plaintiff's failure to object before the taking of the depositions cannot be used to circumvent the requirements of Rule 32."). Accordingly, even if Dr. Wilson's opinion were admissible, the court would not allow his deposition to be used in lieu of live testimony.

## **Conclusion**

For the reasons stated, the court will grant in part Smith's motion *in limine* (ECF No. 65), and grant in part Dillard's motion *in limine* (ECF No. 59).

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 7th day of September, 2021.

> */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE